# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

TRAVIS C MILLS ET AL                    CIVIL ACTION NO. 25-cv-239

VERSUS                                  JUDGE TERRY A. DOUGHTY

ROCKET MORTGAGE LLC ET AL               MAG. JUDGE KAYLA D. MCCLUSKY

### REPORT AND RECOMMENDATION AND MEMORANDUM ORDER

Before the undersigned Magistrate Judge, on reference from the District Court, are several motions, including (1) Motion to Remand and Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction, as well as a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim [docs. #5, 16, 20] filed jointly by Defendants Rocket Mortgage and Herschel Adcock; (2) Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim [doc. #23] filed by Defendant Judge Walter Caldwell; (3) Rule 12(b)(5) Motion to Dismiss for Insufficient Service of Process [doc. #26] filed by Defendant Sheriff Mike Tubbs; and (4) Motion for Leave to File Second Amended Complaint [doc. #18] filed by Plaintiffs Travis C. Mills and Regina Harrell Mills. The motions are opposed  [docs. #8, 18, 20, 29, 31, 32].

For reasons detailed below, **IT IS ORDERED** that the Motion for Leave to File Second Amended Complaint [doc. #18] filed by Plaintiffs Travis C. Mills and Regina Harrell Mills is **GRANTED**.

**IT IS RECOMMENDED** that the Motion to Remand [docs. #5, 16, 20] filed by Defendants Rocket Mortgage and Herschel Adcock be **DENIED.**

**IT IS FURTHER RECOMMENDED** that the Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction [docs. #5, 16, 20] filed jointly by Defendants Rocket Mortgage and Herschel Adcock be **GRANTED IN PART and DENIED IN PART.**

**IT IS FURTHER RECOMMENDED** that the Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim [docs. #5, 16, 20] filed jointly by Defendants Rocket Mortgage and Herschel Adcock, the Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim [doc. #23] filed by Defendant Judge Walter Caldwell, and the Rule 12(b)(5) Motion to Dismiss for Insufficient Service of Process [doc. #26] filed by Defendant Sheriff Mike Tubbs be **GRANTED.**

## I.    BACKGROUND

On or about May 13, 2022, Travis C. Mills and Regina Harrell Mills (collectively, "Plaintiffs") entered into a promissory note with Rocket Mortgage, LLC ("Rocket") in the amount of $305,550 in exchange for a mortgage on property located at 6950 Westlake Road, Sterlington, Louisiana. [doc. #5-6]. The promissory note was a fixed-rate note with an interest rate of 5.375% per annum, amounting to a monthly payment of $1,711.00 due on the first of each month beginning on July 1, 2022. *Id.* The mortgage agreement provided that any failure to pay any charges provided in the note could result in acceleration of the sums owed and sale of the property. [doc. #5-7]. On May 1, 2024, Plaintiffs failed to make a timely payment in accordance with the note. [doc. #1-2]. Rocket provided Plaintiffs with the notice of default, and Plaintiffs failed to properly cure the default. *Id.*

On December 3, 2024, Herschel C. Adcock, Jr. ("Adcock") filed a Petition for Mortgage Foreclosure By Executory Process Without Appraisal in the 4th Judicial District Court for Morehouse Parish, Louisiana, on behalf of Rocket. *Id.* On December 10, 2024, the state court

judge, Judge Walter M. Caldwell, IV ("Judge Caldwell") ordered that a Writ of Seizure and Sale be issued commanding the Sheriff of Morehouse Parish to seize and sell the immovable property encumbered by Rocket's mortgage. [doc. #5-2]. On January 5, 2025, the Sheriff of Morehouse Parish, Mike Tubbs ("Sheriff Tubbs"), served a copy of a notice of seizure of the immovable property described in the mortgage upon the Clerk of Court for Morehouse Parish, Louisiana. [doc. #5-3]. That same day, Plaintiffs, as well as Adcock, were also served a certified copy of the notice of seizure. [docs. #5-4, 5-5]. The notice of seizure noted that the property would be sold at a sheriff's sale on Wednesday, February 26, 2025, at 10:00 A.M. *Id*.

On the morning of February 26, 2025, Plaintiffs filed a Complaint and Notice of Removal in the Western District of Louisiana.[1] [doc. #1]. In this Complaint, Plaintiffs named Rocket, Adcock, Judge Caldwell, and Sheriff Tubbs as Defendants and alleged violations of the Truth in Lending Act ("TILA"), violations of due process, and fraudulent actions which preceded the foreclosure. *Id*. Plaintiffs simultaneously filed a motion for Temporary Restraining Order ("TRO") to stay the foreclosure proceedings. [doc. #2]. The TRO was denied by Judge Doughty on February 26, 2025. [doc. #4]. As such, the Louisiana state court foreclosure proceeding of the property was completed as scheduled.

On March 6, 2025, Defendants Adcock and Rocket filed a joint motion to remand[2] and motion to dismiss for failure to state a claim upon which relief can be granted. [doc. #5]. Both

---

[1] The filing made by Plaintiffs in the Western District of Louisiana both purported to be a removal of a state court action and an original complaint. Insofar as Plaintiffs intended to remove the ongoing state court proceedings to federal court, those claims were terminated by Judge Doughty's denial of Plaintiffs' motion for a TRO and the subsequent completed sheriff's sale, which ended any ongoing state controversy. Given this, as well as Plaintiffs' pro se status, the Court will treat Plaintiffs' filings as an original complaint in its analysis hereafter.

[2] As the Court will be continuing its analysis with the understanding that Plaintiffs' claims are an original filing, there is no ongoing state court controversy to remand.

Defendants argue that the Court does not possess subject matter jurisdiction over the claims for several reasons. *Id*. First, they argue that the Court lacks subject matter jurisdiction to modify or hinder the state court decision because of the Rooker-Feldman doctrine. *Id*. Second, they contend diversity jurisdiction cannot be established because three of the Defendants added, namely Adcock, Sheriff Tubbs, and Judge Caldwell, are citizens of the same state as the Plaintiffs. *Id*. Finally, they contend the Plaintiffs cannot base federal question jurisdiction upon allegations contained in their removal complaint concerning federal law. *Id*.

Plaintiffs filed an opposition to Defendants' motion to remand and motion to dismiss on March 10, 2025. [doc. #8]. Plaintiffs reasserted this Court's subject matter jurisdiction, arguing that the Rooker-Feldman doctrine does not apply to their present claims as they are not seeking to overturn a state court judgment but assert fraudulent actions by Defendants. *Id*. They additionally filed a First Amended Complaint and Motion for Leave to File a Second Amended Complaint on March 26, 2025, and on April 23, 2025, respectively. [docs. #10, 18]. The amended complaints contain several additional claims against the Defendants, including violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Fair Debt Collection Practices Act ("FDCPA"), and various state claims of fraud, unjust enrichment, and civil conspiracy. [doc. #18]. Plaintiffs seek various forms of relief, including recission of the original mortgage, declaration of invalidity as to the mortgage and foreclosure, quiet title in favor of the Plaintiffs, restitution for payments toward the mortgage, other compensatory damages and punitive damages. [docs. #1, 10, 18].[3]

---

[3] While the most recent pleading is typically the operative one, in light of Plaintiffs' pro se status, the Court has considered all allegations in the Complaint, Amended Complaint, and Second Amended Complaint.

Each of the Defendants filed responses to these original and amended complaints. Rocket and Adcock objected to both the first and second amended complaints alleging that they were not properly served with the amended complaints and reasserted their motion to remand and motion to dismiss on April 17, 2025, and April 24, 2025. [docs. #16, 20]. Judge Caldwell filed a motion to dismiss for failure to state a claim on April 26, 2025. [doc. #23]. Sheriff Tubbs filed a motion to dismiss for insufficient service of process. [doc. #26].

All of the aforementioned matters are now ripe.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted).

In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera-Montenegro v. USA & DEA*, 74 F.3d 657, 659 (5th Cir. 1996). When examining a factual challenge to subject matter jurisdiction that does not implicate the merits of plaintiff's cause

of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *see also Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986). Accordingly, the Court may consider matters outside the pleadings, such as testimony and affidavits. *See Garcia*, 104 F.3d at 1261. A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not necessarily prevent the plaintiff from pursuing the claim in another forum. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

**B.     Federal Rule of Civil Procedure 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)). "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements"

or "naked assertion[s] devoid of further factual enhancement" are not sufficient. *Iqbal*, 556 U.S. at 663, 678 (citations omitted).

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).

## C.    Federal Rule of Civil Procedure 12(b)(5)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(5) "challenges the mode of delivery or the lack of delivery of the summons and complaint." *Gartin v. Par Pharm. Cos., Inc.*, 289 Fed. App'x 688, 692 (5th Cir. 2008) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1353) (internal quotations omitted). When service is challenged, the serving party bears the burden of proving its validity or good cause for failure to effect timely service. *Kitchen v. Walk-On's Bistreaux & Bar*, 2020 WL 2404911, at *3 (W.D. La. May 12, 2020) (citing *Sys. Signs Supplies v. U.S. Dep't of Justice, Washington D.C.*, 903 F.2d 1011, 1013 (5th Cir. 1990)).

"If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specific time." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.*

### III.    **POTENTIAL RULE 11 VIOLATIONS**

Normally, the undersigned would now turn to an analysis of the parties' arguments. However, as an initial matter, many of Plaintiffs' referenced filings are rife with citations to cases that do not exist, mischaracterizations of cases which do exist, or incorrect citations to cases.  It appears that Plaintiffs likely used generative artificial intelligence ("GenAI") to assist in research and failed to check whether the GenAI-generated content was accurate.

Under Federal Rule of Civil Procedure 11(b), by presenting this brief to the Court, Plaintiffs "certifie[d] to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the "legal contentions are warranted by existing law."  FED. R. CIV. P. 11(b).  Plaintiffs have not abided by this certification with the aforementioned filings. The fact that Plaintiffs are proceeding pro se does not excuse the failure to comply with Rule 11.  *Gordon v. Wells Fargo Bank N.A. Inc.*, 2025 WL 1057211, at *3 (M.D. Ga. Apr. 8, 2025); *Attaway v. Ill. Dep't of Corr.*, 2025 WL 1101398 at *3 (explaining that the fact that a party is pro se and "not a licensed attorney" "is not an excuse for leniency with Rule 11"); *McKeown v. Paycom Payroll LLC*, No. CIV-24-301-PRW, 2025 U.S. Dist. LEXIS 60391, 2025 WL 978221, at *9 (W.D. Okla. Mar. 31, 2025).  Therefore, it is recommended the District Court consider whether Rule 11(c) sanctions should be ordered based on their inappropriate use of GenAI.  *See Gauthier v. Goodyear Tire & Rubber Co.*, 2024 WL 4882651, at *3 (E.D. Tex. Nov. 25, 2024) (requiring an attorney who cited quotes and cases that do not exist to pay a $2000 penalty to the Court).  Regardless of any action which may be taken by the presiding District Judge, on this occasion, Plaintiffs are warned that any further inappropriate use of GenAI could result in sanctions, such as the striking of their briefs, fines, or other appropriate actions.

# IV.     ANALYSIS

## A.     Subject Matter Jurisdiction

The undersigned now turns to consider whether it possesses subject matter jurisdiction over the present case.  Plaintiffs contend this Court possesses subject matter jurisdiction under both 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. § 1332, diversity jurisdiction.  [docs. #1, 18-2].  Defendants Rocket Mortgage and Adcock contend that there are Defendants who are Louisiana residents, defeating diversity jurisdiction.  [doc. # 5].  Defendants further allege that federal question jurisdiction has not been properly pleaded on the face of Plaintiff's Complaint. *Id*.

Turning first to 28 U.S.C. § 1332, the undersigned finds that there a lack of complete diversity to support diversity jurisdiction.  Diversity jurisdiction requires all plaintiffs to be diverse in citizenship from all defendants and that the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332.  "Because federal courts have limited jurisdiction, parties must make 'clear, distinct, and precise affirmative jurisdictional allegations' in their pleadings." *Getty Oil Corp. v. Ins. Co. of N. Am*., 841 F.2d 1254, 1259 (5th Cir. 1988).  In alleging diversity, this requires properly alleging the citizenship of the parties.  For individuals, citizenship is an individual's domicile, which requires "residence and the intention to remain."  *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc*., 485 F.3d 793, 798 (5th Cir. 2007).  A corporation's citizenship is the state in which it has been incorporated and the state of its principal place of business.  28 U.S.C. § 1332(c)(1).  Defendants have asserted, and Plaintiffs do not contest, that Defendants Adcock, Judge Caldwell, and Sheriff Tubbs are all citizens of Louisiana.  As Plaintiffs are also citizens of Louisiana, there is not complete diversity between the Plaintiffs and all

Defendants as required under 28 U.S.C. § 1332.  Accordingly, this Court is not able to exercise diversity jurisdiction over Plaintiffs' claims.

However, this Court finds that federal question jurisdiction under 28 U.S.C. § 1331 has been established initially.  "[F]ederal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 474 (1998) (citations omitted).  Section 1331 jurisdiction is properly invoked when plaintiff pleads a colorable claim "arising under" the Constitution or laws of the United States. *Arbaugh v. Y & H Corporation*, 546 U.S. 500 (2006).  Indeed, "[t]he assertion of a claim under a federal statute alone is sufficient to empower the District Court to assume jurisdiction over the case…" *Cervantez v. Bexar County Civil Service Commission*, 99 F.3d 730, 733 (5th Cir. 1996) (quoting *Holland/Blue Streak v. Barthelemy*, 849 F.2d 987, 988-989 (5th Cir. 1988)).

In both their initial Complaint and their Amended Complaint, Plaintiffs allege violations of the Truth in Lending Act ("TILA"),[4]  15 U.S.C. §§ 1601, *et seq.*; they further allege in their amended complaint violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*; the Fourteenth Amendment of the United States Constitution; and the Racketeer Influences and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq*.  This Court has original jurisdiction over each of these claims, all of which arise under federal law and, thus, trigger federal question jurisdiction. *See Smith v. Barrett Daffin Frappier Turner & Engel, LLP*, 735 Fed. App'x 848, 853 (5th Cir. 2018).  Accordingly, based on the claims currently asserted in Plaintiffs'

---

[4] This analysis, again, presumes Plaintiffs' filings to be an original Complaint rather than a removal.

Amended Complaint, this Court may exercise subject matter jurisdiction. Moreover, this Court may exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. 28 U.S.C. § 1367. The federal and state law claims both arise from and presuppose the alleged fraudulent foreclosure and, thus, are so related that they form part of the same case or controversy.

While there is an initial finding of jurisdiction, the Court's inquiry may not conclude here. Defendants further argue that the Court's exercise of jurisdiction is improper under the Rooker-Feldman doctrine. The Rooker-Feldman doctrine bars federal courts from adjudicating claims where the plaintiff seeks to overturn a state-court judgment. *Truong v. Bank of Am., N.*A., 717 F.3d 377, 382 (5th Cir. 2013) (citing *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)). The Rooker-Feldman doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments except when authorized by Congress. *Truong,* 717 F.3d at 382 (citing *Union Planters Bank Nat'l Ass'n v. Salih,* 369 F.3d 457, 462 (5th Cir. 2004)).

The doctrine is a narrow one confined to cases brought by "state-court losers" complaining of injuries caused by state court judgments rendered before the commencement of the federal district court proceedings and inviting district court review and rejection of those judgments. *Id*. (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005)). Importantly, the Rooker-Feldman doctrine does not prohibit a plaintiff from presenting an independent claim, even if that claim denies a legal conclusion that a state court has reached in a case to which he was a party. *Id*. (citing *Exxon Mobil*, 544 U.S. at 284). However, a plaintiff cannot circumvent this jurisdictional limitation "by asserting claims not raised in the state court proceedings or claims framed as original claims for relief" if such claims are "'inextricably intertwined' with a state court judgment." *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994) (quoting *Feldman*, 460

U.S. at 482 n.16)).  Likewise, "litigants may not obtain review of state court actions by filing complaints about those actions in lower federal courts cast in the form of civil rights suits." *Hale v. Harney*, 786 F.2d 688, 690-91 (5th Cir. 1986), *overruled on other grounds by Miller v. Dunn*, 35 F.4th 1007 (5th Cir. 2022); *see also Kimball v. The Fla. Bar*, 632 F.2d 1283, 1284-85 (5th Cir. 1980).  Indeed, the only federal recourse for constitutional questions arising in state court may be found by applying for a writ of certiorari to the United States Supreme Court.  *See Liedtke v. State Bar of Tex.,* 18 F.3d 315, 317 (5th Cir. 1994).

In determining whether the Rooker-Feldman doctrine bars a federal lawsuit it is important to identify the source of the plaintiff's alleged injury and the relief sought.  *Jones v. Wells Fargo Home Mortg., Inc*., 2025 WL 2419721 at *2; *see also Truong*, 717 F.3d at 382-83 (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)).  In *Brooks v. Flagstar Bank*, the court reviewed allegations similar to those in this case and held them to be inextricably intertwined with the state court judgment.  *Brooks v. Flagstar Bank*, 2011 WL 2710026 at *1 (suit challenging the defendant's actions in connection with a final judgment of foreclosure on the plaintiffs' home).  The plaintiffs alleged that defendant Flagstar "did not have the right to foreclose on the property and that defendants' actions before and after the foreclosure violated numerous federal and state laws." *Id*.

The *Brooks* court held that "[c]ertain of plaintiffs' claims would require the Court to review the state court judgment ordering issuance of the writ of seizure and sale, or are inextricably intertwined with that judgment, and the Court lacks jurisdiction over those claims" under the Rooker-Feldman doctrine.  *Id*. at *4 (reasoning that the plaintiffs' causes of action related to defendants alleged "abuse" of the executory process, failure to properly serve plaintiffs with a notice of foreclosure and a proper demand, improper issuance of a writ of seizure, and bad faith

abuse of the executory process "constitute direct attacks on the state court judgment and seek a thorough review of state court foreclosure procedures"); *see also Thomas v. Sticker*, 2025 WL 1170725 at *10 (holding that claims of failure to follow proper executory procedures are "direct attacks on the state court judgment" and are, therefore, "inextricable intertwined with" the state court judgment).

Several of the claims in Plaintiffs' complaints are precisely the kind of claims to which the Rooker-Feldman doctrine is intended to apply. Specifically, for Counts 3, 5, 6, 7, and 8, the relief sought would require the Court to invalidate, or otherwise negate, the state court's order judgment ordering the seizure and sale of the property or that the process undertaken by Defendants was invalid or improper.[5] Thus, these claims are outside the jurisdiction for this Court to adjudicate. However, violations of the TILA, the FDCPA, and RICO do not appear to implicate the validity of the state court foreclosure judgment. Adjudicating those claims does not call upon this court to either review or disturb the state court foreclosure judgment. The Court is persuaded that the federal claims are independent claims that properly fall under this Court's original subject matter jurisdiction. Therefore, this Court finds that Count 3, 5, 6, 7, and 8 are barred by the Rooker-Feldman doctrine while Counts 1, 2, and 4 are properly within this Court's jurisdiction.

**IT IS RECOMMENDED** that Counts 3, 5, 6, 7 and 8 be **DISMISSED WITHOUT PREJUDICE** for a lack of subject matter jurisdiction.

---

[5] The Court to the counts as numbered in the Second Amended Complaint [doc. #18] filed by Plaintiffs. Count 3 is an alleged Fourteenth Amendment Due Process Violation which seeks only injunctive relief. Count 5 is a state law claim of fraud under La. Civ. Code art. 1953. Count 6 is a state law claim for unjust enrichment under La. Civ. Code art. 2298. Count 7 is simply a request for a quiet title decree in Plaintiffs' favor. Finally, count 8 is a civil conspiracy state law claim which specifically centered on the sale of the property in question. As such, each of these claims implicate the Rooker-Feldman doctrine.

**B.**      **Plaintiffs' Motion for Leave to File Second Amended Complaint**

Notably, the counts as outlined above were documented in Plaintiffs' Second Amended Complaint.  [doc. #18-2].  Plaintiffs filed a motion for leave to file this Second Amended Complaint on April 23, 2025.  [doc. #18-1].  The only objection to Plaintiff's motion for leave was raised by Rocket and Adcock for inadequate service of process.  [doc. #20].

Plaintiffs have the burden to ensure that Defendants are properly served with summons and a copy of the original complaint under Rule 4(c)(1) of the Federal Rules of Civil Procedure.  FED. R. CIV. P. 4(c)(1).  After a party has been served with the initial pleading and has appeared, however, service of subsequent pleadings on that party is proper under Rule 5(a*).  Fluor Engineers and Constructors, Inc. v. Southern Pacific Transp. Co*., 753 F.2d 444, 449 & n. 7 (5th Cir. 1985) (explaining that the purpose of Rule 5 is "to facilitate the pleadings process by permitting service on attorneys of record rather than the individual litigants once the parties are before the court").  Accordingly, personal service of the summons and complaint is not required to serve an amended complaint on parties who have already appeared in the litigation.  *See id.*; *see also Employee Painters' Trust v. Ethan Enters., Inc.*, 480 F.3d 993, 995-96, 999 (9th Cir. 2007) (finding that Rule 5 permits service of an amended complaint without personal service of the summons and complaint on defendants who were properly served with the original complaint and have appeared); *Ware v. Gary Community School Corp.*, 2015 WL 6756870, at *5 (N.D. Ind. 2015) (finding that no summons is required for service of an amended pleading on parties who have been served with the initial pleading under Rule 4) (citing FED. R. CIV. P. 5(a)(1)(B)); *Handshoe v. Abel*, No., 2015 WL 12915568, at *2 (S.D. Miss. 2015) ("Rule 5 permits service of an amended complaint [on] an existing defendant, without personal service of the summons and complaint, if the defendant previously appeared in the action").

Further, it is well established that "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *see also Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir. 2002). Rule 15(a) of the Federal Rules of Civil Procedure provides that the Court should freely grant leave to amend "when justice so requires." FED. R. CIV. P. 15(a). However, "a district court may refuse leave to amend if the filing of the amended complaint would be futile, i.e., if the complaint as amended would be subject to dismissal." *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014).

The docket reflects that all Defendants named in the original complaint, apart from Sheriff Tubbs, were properly served with the original complaint. Personal service of summons and the amended complaint is not required for these Defendants who have been properly served under Rule 4 and who have already appeared. Under Rule 5, they were served with the amended complaint when Plaintiff filed it using the Court's electronic filing system. Additionally, the Court finds granting Plaintiffs leave to amend will not cause Defendants any prejudice. Therefore, the motion for leave to file a Second Amended Complaint is **GRANTED**, and the Court considers the claims in Plaintiffs' Second Amended Complaint.

## C.    Rocket and Adcock's Motion to Dismiss for Failure to State a Claim

As noted above, the Rule 12(b)(6) motion to dismiss was filed jointly by Rocket and Adcock. For the following analysis, however, Rocket and Adcock's arguments apply with equal force to Plaintiffs' claims against Judge Caldwell and Sheriff Tubbs. Where, as here, a defending party establishes that a plaintiff has no cause of action, this defense should inure to similarly situated defendants. *See Lewis v. Lynn,* 236 F.3d 766, 768, 236 F.3d 766 (5*th* Cir. 2001) (where defending party establishes that plaintiff has no cause of action, the defense generally inures to the benefit of a non-appearing co-defendant). Furthermore, the instant report and recommendation

provides adequate notice to the parties. *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998)). Therefore, any and all Rule 12(b)(6) motion rulings apply, not only to Rocket and Adcock, but to all Defendants.

### 1.    *Violations of TILA*

In their original complaint, Plaintiffs allege Defendants violated TILA under 15 U.S.C. § 1601 for failing to properly provide the appropriate disclosure statement in a separate document and failing to make "key loan terms…clearly and conspicuously presented." Their First Amended Complaint adds claims under U.S.C. § 1641(g) for allegedly failing to notify Plaintiffs of "transfers and assignments." The relief sought in the First Amended Complaint for these alleged TILA violations included recission of the original mortgage contract. In their Second Amended Complaint, Plaintiffs allege that Defendants violated TILA by failing to "notify Plaintiffs of the mortgage assignment…and failed to provide a separate TILA Disclosure Statement or disclose down payment terms." [doc. #18-2, p. 8]. Plaintiffs claim these failures were violations of 15 U.S.C. §§ 1641(g) and 1601. *Id.*

TILA "has the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559-60 (1980) (citing 15 U.S.C. § 1601). TILA defines disclosures that must be made in certain consumer credit transactions, including disclosure of the consumer's right to rescind up to three business days following consummation of the transaction, delivery of a notice of right to rescind, or delivery of all material disclosures, whichever occurs last. *See* 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a)(3), (b). If notice of the right to rescind and certain material disclosures are not timely made, the right to rescind expires three years after consummation of the transaction. *See* 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). If an obligor exercises his right to rescind, the

security interest given by the obligor is void, and the creditor must return any money or property given as earnest money or down payment and take any necessary action to reflect the termination of the security interest. 15 U.S.C. § 1635(b).  However, there is no right of rescission with respect to "residential mortgage transactions."  *See* 15 U.S.C. § 1635(e)(1); 12 C.F.R. § 226.23(f)(1); *Perkins v. Central Mortg*. Co., 422 F. Supp. 2d 487, 489 (E.D. Pa. 2006) (explaining that the right of rescission does not apply to residential mortgage transactions).  A "residential mortgage transaction" means "a transaction in which a mortgage . . . is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."  15 U.S.C. § 1602(w).  To bring an action against a creditor under TILA for damages, the debtor must bring the action "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e); *see also, In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984).

The Court finds that the relief sought by Plaintiffs for failure to disclose is not available. As an initial matter, the Court notes that the Plaintiffs' mortgage and note were for the purposes of purchasing the property located at 6950 Westlake Road, and, as such, Plaintiffs have no right of rescission for any alleged failure to disclose.  *See* 15 U.S.C. § 1635(e)(1); 12 C.F.R. § 226.23(f)(1).  Likewise, Defendants were not required to make specific disclosures related to the right of rescission because Plaintiffs had no such right.  *See Perkins v. Central Mortg. Co*., 422 F. Supp. 2d 487, 489 (E.D. Pa. 2006); *see also* 12 C.F.R. § 226.23(b)(1) ("In a transaction *subject to rescission*, a creditor shall deliver two copies of the notice of the right to rescind…") (emphasis added).  Moreover, because Plaintiffs' mortgage rate was fixed, Defendants were not required to provide them with a copy of the Consumer Handbook on Adjustable-Rate Mortgages.  *See* 12 C.F.R. § 226.19(b)(1) (requiring disclosure of the handbook "[i]f the annual percentage rate may increase after consummation").

Further, even assuming Defendants somehow violated TILA by failing to make the required disclosures, Plaintiffs' claim is time barred. Under 15 U.S.C. § 1640(e), "[a]ny action under this section may be brought . . . within one year from the date of the occurrence of the violation." "The limitations period in Section 1640(e) runs from the date of the transaction . . . but the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *Jackson v. Adcock*, 2004 WL 1900484, *4 (E.D. La. 2004) (quoting *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986)). Plaintiffs signed the note and mortgage documents on May 13, 2022, but did not bring this action against Defendants in state court until February 20, 2025, and did not allege violations of TILA until February 26, 2025. The statute of limitations thus bars Plaintiffs' claims. *See Jackson*, 2004 U.S., 2004 WL 1900484 at *4 (dismissing plaintiff's TILA claim for failure to file within the limitation period and noting that "[n]othing prevented [plaintiff] from comparing the loan documents and TILA's statutory and regulatory requirements").

For the preceding reasons, the undersigned finds that Plaintiffs have failed to state a claim against either Rocket or Adcock under TILA. As such, **IT IS RECOMMENDED** that the 12(b)(6) motion to dismiss be **GRANTED** as to the TILA claims, and these claims be **DISMISSED WITH PREJUDICE.**

###### 2.     *Violations of the FDCPA*

The threshold determination for stating an FDCPA claim is whether the defendants fall under the statute's definition of a "debt collector." *See Brown v. Morris*, 243 F. App'x 31, 36 (5th Cir. 2007) (stating that whether defendant is a debt collector is a "threshold determination" for an FDCPA claim); *accord Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010)

(holding, for the FDCPA to apply, the defendant must qualify as a debt collector); Montgomery v. Huntington Bank, 346 F.3d 693, 698 (6th Cir. 2003) (holding whether the defendants fall under the FDCPA definition of a "debt collector" is a "threshold matter").  The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another... For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6).  Debt collectors are prohibited from, inter alia, making false or misleading representations in connection with the collection of a debt and using unfair or unconscionable means to collect a debt.  15 U.S.C. §§ 1692e, 1692f.  Plaintiffs do not allege any of the Defendants are debt collectors and simply state that Rocket and Adcock used "falsified documents" and "misrepresented the sale price" of the property.  [doc. #18-2, p. 9].  However, even if Plaintiffs were to allege Rocket is a debt collector, the Fifth Circuit has held that "mortgage companies collecting debts are not 'debt collectors'" for purposes of the FDCPA.  *Perry v. Stewart Title Co*., 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned").  Courts also have held "the activity of foreclosing on a property pursuant to a deed of trust is not the collection of debt within the meaning of the FDCPA."  *Bittinger v. Wells Fargo Bank NA*, 744 F. Supp. 2d 619 (S.D. Tex. 2010) (quoting *Williams v. Countrywide Home Loans*, Inc., 504 F. Supp. 2d 176, 190 (S.D. Tex. 2007), aff'd, 269 F. App'x 523 (5th Cir. 2008)).  Thus, Plaintiffs have failed to state an FDCPA claim against Rocket.

With respect to Adcock the FDCPA *may* apply to litigating lawyers "who 'regularly collec[t] or attempt[t] to collect, directly or indirectly, [consumer] debts owed or due or asserted to be owed or due another.'" *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) (citing 15 U.S.C. 1692a(6)). Essentially, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly "attempts" to "collect those consumer debts." *Id.* However, Plaintiffs have not alleged in their complaint that Adcock regularly attempts to collect consumer debts in order to qualify as a debt collector under the FDCPA.

Further, to assert a valid FDCPA claim against Adcock, Plaintiffs also must allege that 1) they are consumers and 2) Defendants violated a provision of the FDCPA. 15 U.S.C. § 1692a(3) ("The term consumer means any natural person obligated or allegedly obligated to pay any debt"), 1692i, 1692a-1692o, 1692k; *see also Serna v. Law Office of Joseph Onwuteaka, P.C.*, 614 F. App'x 146, 151-52 (5th Cir. 2015); *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051 (C.D. Cal. 2009) ("In order for a plaintiff to recover under the FDCPA, there are three threshold requirements: the plaintiff must be a 'consumer'; (2) the defendant must be a 'debt collector'; and (3) the defendant must have committed some act or omission in violation of the FDCPA"). Plaintiffs, however, have not alleged they are consumers under the FDCPA or alleged sufficient facts to state a claim for a violation of any section of the FDCPA. Plaintiffs' factual allegations amount to the use of allegedly falsified documents and misrepresentation of the sale price. [doc. #18, p. 9].

Further, although citing 15 U.S.C. § 1692e, Plaintiffs do not allege any actions taken by Adcock that violate any of the FDCPA's prohibitions against false or misleading representations or unfair or unconscionable means in collecting a debt. Section 1692e provides, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the

collection of any debt" and enumerates non-exclusive examples of false representations, including "[t]he false representation of the character, amount, or legal status of any debt" and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt."  Plaintiffs additionally cite 15 U.S.C. § 1692f, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

Plaintiffs have not pleaded sufficient facts to support a finding that Adcock made a false, deceptive, or misleading representation in violation of § 1692e or used unfair or unconscionable means in violation of § 1692f.  The general allegations that Adcock "falsified documents," without more, lacks plausibility on its face.  General and conclusory allegations are also inadequate to survive a motion to dismiss.  *Brooks*, 2011 WL 2710026 at *7 (holding that plaintiff's allegation they received "threatening letters" from debt collector defendants without providing the contents of the letter was an insufficient pleading of facts to show a violation of the FDCPA).  For these reasons, the undersigned finds that Plaintiffs have failed to state a claim against either Rocket or Adcock under the FDCPA.

**IT IS RECOMMENDED** that the 12(b)(6) motion to dismiss be **GRANTED** as to Plaintiffs' FDCPA claims, and these claims be **DISMISSED WITH PREJUDICE**.

*3.    Violations of RICO*

Plaintiffs also seek statutory damages under RICO, specifically, 18 U.S.C. § 1964(c), which provides damages to those injured by reason of a violation of 18 U.S.C. § 1962.  RICO claims brought under § 1962 have three common elements: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise."  *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (quoting *World of Faith*

*World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 121-22 (5th Cir. 1996)); *see also St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009).

Plaintiffs allege that Defendants "formed an enterprise to fraudulently foreclose on Plaintiffs' property, engaging in mail fraud…and wire fraud…via falsified documents." [doc. #18-2, p. 9]. They further allege that this "pattern of racketeering caused Plaintiffs to lose their property…" *Id.* at 10. To allege a "pattern of racketeering activity," a plaintiff must show that the defendant committed two or more predicate offenses that are 1) related and 2) amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *see also Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996); *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007).

Predicate offenses include the violation of certain state and federal laws. *See* 18 U.S.C. § 1961(1). "The requirement of 'continued criminal activity' reflects Congress's concern with 'long-term criminal conduct.'" *Castrillo v. Am. Home Mortg. Servicing, Inc.*, 670 F. Supp. 2d 516, 530 (E.D.La. 2009) (citing *H.J., Inc.*, 492 U.S. at 242). Continuity is "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 492 U.S at 239. An open period of continuity refers to a "specific threat of repetition extending indefinitely into the future" or "that the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id.* A closed period of continuity may be demonstrated by a series of related predicates extending over a substantial period of time. *Id.* at 242.

The Fifth Circuit has consistently held that "where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown." *See Word of Faith*, 90 F.3d at 123. In *Word of Faith*, a church alleged various

racketeering acts in connection with the production of ABC PrimeTime broadcasts, including interstate transportation of stolen computer disks, theft of donations, wire fraud, and obstruction of justice. *Id.* at 121. The Fifth Circuit affirmed dismissal of the RICO complaint because the alleged predicate acts "were all part of a single, lawful endeavor - namely the production of television news reports concerning a particular subject." *Id.* at 123; *see also In re Burzynski,* 989 F.2d 733, 742-43 (5th Cir. 1993) (affirming dismissal of a RICO complaint arising out of what it deemed a single, discrete transaction); *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 244 (5th Cir. 1988), cert. denied, 489 U.S. 1079 (1989) (holding that a complaint which alleged "nothing more than numerous predicate acts which were necessary segments of an otherwise legitimate and singular commercial endeavor" was insufficient to sustain a RICO claim).

The Court finds these foreclosure proceedings are, essentially, a "single, discrete" transaction. *See Word of Faith*, 90 F.3d at 123. The foreclosure of a property in default does not "by its nature project[] into the future with a threat of repetition." *H.J., Inc.* 492 U.S. at 241. To the contrary, it is by its nature a one-time resolution of disputed property rights. Defendants' conduct thus implicates, at best, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct." *H.J., Inc.*, 492 U.S. at 242. Therefore, Plaintiffs have failed to allege the requisite pattern of racketeering activity to properly assert a RICO claim.

However, with respect to the second element, "a RICO plaintiff may show that the defendant engaged in the collection of unlawful debt as an alternative to showing the defendant engaged in a pattern of racketeering activity." 18 U.S.C. § 1962 (a)-(c); *see In re MasterCard Intern. Inc.*, 313 F.3d 257, 261 (5th Cir. 2002); *Nolen v. Nucentrix Broadband Networks*, 293 F.3d 926, 928-29 (5th Cir. 2002). The definition of an unlawful debt under RICO is limited to debts "incurred or contracted in an illegal gambling activity or in connection with the illegal business of

lending at usurious rates."  18 U.S.C. § 1961(6); *see also MasterCard*, 313 F.3d 257 at 263. Plaintiffs do not allege their mortgage was unlawful due to usurious rates.  Nor do they allege it was made incurred or contracted in connection with illegal gambling activity.  As a result, Plaintiffs have failed to allege facts sufficient to constitute the collection of an unlawful debt.

Because all three elements must be alleged, and Plaintiffs have not alleged facts to support the second element, the Court need not consider whether the other elements have been alleged. *See MasterCard*, 313 F.3d. 257 at 261, 263 (affirming district court's dismissal of a RICO claim under a 12(b)(6) motion because the plaintiff failed to show a pattern of racketeering activity or collection of an unlawful debt). Therefore, the undersigned finds that Plaintiffs have failed to allege RICO claims against Rocket and Adcock.

**IT IS RECOMMENDED** that the 12(b)(6) motions should be **GRANTED** as to any and all RICO claims and these claims be **DISMISSED WITH PREJUDICE**.

**D.      Judge Caldwell's Motion to Dismiss for Failure to State a Claim**

"Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages."  *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991)).  When assessing the entitlement to judicial immunity, the Fifth Circuit has held that "[i]t is the Judge's actions alone, not intent, that we must consider."  *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993).  Judicial immunity "can be overcome in two sets of circumstances: (1) 'a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity'; and (2) 'a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'"  *Ballard*, 413 F.3d at 515 (quoting *Mireles*, 502 U.S. at 11-12).  A judge's actions are judicial in nature if they are "normally performed by a judge" and

the parties affected "dealt with the judge in his judicial capacity." *Mireles*, 502 U.S. at 12 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).

Judge Caldwell asserts he is entitled to judicial immunity, and, thus, Plaintiffs' claims against him in his official capacity must be dismissed. [doc. #23-1]. As discussed above, Plaintiffs allege that "Defendants knowingly and repeatedly misrepresented the authenticity of records to mislead the Court and dispossess Plaintiffs of their property." [doc. #4, 18]. In opposition to Judge Caldwell's motion to dismiss, Plaintiffs assert that Judge Caldwell had a mandatory duty to "review the mortgage and confirm the presence of…[a] valid notarization…[a] conspicuous confession of judgment… and [a]uthentic evidence" and that he had failed to do so. [doc. #31, p.7].

Plaintiffs' allegations are not sufficient to overcome Judge Caldwell's judicial immunity, as Plaintiffs' allegations are clearly related to actions taken by Judge Caldwell in his judicial capacity. *See Ballard*, 413 F.3d at 515 ("[J]udges are entitled to absolute immunity for all actions taken in their judicial capacity, even when allegedly rooted in malice and corruption . . . "; *see also Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991) ("Judges are immune from damages claims arising out of acts performed in the exercise of their judicial functions, even when the judge is accused of acting maliciously." *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972); *Brown v. Anderson*, No. 3:16-CV-0620, 2016 WL 6903730 at *3 (N.D. Tex. Oct. 5, 2016), *report and recommendation adopted* (N.D. Tex. Nov. 21, 2016); *Crissup v. Greenwell*, No. 2:13-cv-137, , 2013 WL 12090341, at *2 (S.D. Tex. July 8, 2013), *report and recommendation adopted*, 2013 2013 WL 12090342 (S.D. Tex. Aug. 7, 2013) (citations omitted).

The undersigned, therefore, finds that Plaintiffs have failed to state a claim on which relief can be granted.  **IT IS RECOMMENDED** that Judge Caldwell's 12(b)(6) motion to dismiss be **GRANTED,** and the claims be **DISMISSED WITH PREJUDICE**.

### E.    Sheriff Tubbs' Motion to Dismiss for Insufficient Service of Process

Sheriff Tubbs moves for dismissal for insufficient service, contended that Plaintiffs attempted to serve him via certified mail.  Sheriff Tubbs argues that this is insufficient for two primary reasons.  First, Plaintiffs' mailing of the complaint to Sheriff Tubbs themselves was improper under Rule 4(c), which allows only those who are "at least 18 years old and **not a party**" to serve a summons and complaint.  Fed. R. Civ. P. 4(c)(2).  Second, Sheriff Tubbs argues that certified mail is not "a proper means of service under Fed. R. Civ. P. 4(c)," and, further, was not authorized under Louisiana law.  [doc. #26-1].

Plaintiffs argue in opposition that service was timely and proper as Sheriff Tubbs was served by a process server, Melissa Miley ("Miley"), at 351 South Franklin St. in Bastrop, Louisiana.  [doc. 28].  Plaintiffs filed a proof of service created by Miley which alleges that a copy of the summons and complaint were delivered to Christopher Thirdkill who accepted service on Sheriff Tubbs' behalf.  *Id.*  In his reply, Sheriff Tubbs  points out that 351 South Franklin Street is not his residence as Plaintiffs allege but is the address of the Morehouse Parish Sheriff's Office.  Sheriff Tubbs states that service upon an individual at their place of work does not meet the service requirements under Louisiana law.  Plaintiffs argue in their sur-reply that because Sheriff Tubbs was sued in his official capacity service at his place of employment was proper.

Under the federal rules, service of process for claims filed against a defendant in his official capacity must comport with the requirements of Rule 4(j)(2).  *Wells v. Gautreaux*, 771 F.

Supp. 3d 842, 849 (M.D. La. 2025); *see also Gilmore v. Wolfe*, 2016 WL 438978, at *2 (M.D. La. Feb. 3, 2016).  According to Rule 4(j)(2), "[a] state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant."  FED. R. CIV. P. 4(j)(2).

In Louisiana, service of citation or other process is made typically made by "personal or domiciliary service."  *Able Sec. & Patrol, LLC v. State of Louisiana*, 2009 WL 1870851, at *2 (E.D. La.) (citing LA. CODE CIV. PROC. art. 1231). However, under Article 1265 of the Louisiana Code of Civil Procedure, "[a] public officer, sued as such, may be served at his office either personally, or in his absence, by serve upon any of his employees of suitable age and discretion." LA. CODE CIV. PROC. ANN. art. 1265; *see also Gilmore v. Wolfe*, 2016 WL 438978, at *2 (M.D. La.) (stating that Article 1265 governs service on individuals sued in their official capacities).

However, Article 1265 mandates that "a defendant sued in his official capacity must be *personally served* at his office *unless he is absent from work*." *Gilmore,* 2016 WL 438978, at *2 (citing LA. CODE CIV. PROC. ANN. art. 1265) (emphasis added); see also *Wells*, 771 F. Supp. 3d at 849.  Service upon an individual sued in their official capacity at their workplace is proper, but Article 1265 still requires service upon the individual *personally*.  Here, the Proof of Service submitted to the Court by Plaintiffs indicates that Sheriff Tubbs' summons was served on Christopher Thirdkill who identified himself to the process server as the lieutenant at Morehouse Parish Sheriff's Office.  Plaintiffs do not anywhere assert that Sheriff Tubbs was not personally served because he was absent from work. As such, the requirements of Art. 1265 are not met, and service on Sheriff Tubbs in his official capacity was not proper.  *Gilmore,* 2016 WL 438978,

at *2 (finding defendants sued in their official capacity not properly served because plaintiff did not assert that said defendants were not personally served because they were absent from work at the time).  Further "[e]stablishing that he has properly effectuated service upon each defendant is Plaintiff's burden to bear." *Wells*, 771 F. Supp. 3d at 850 ( citing Gilmore, 2016 WL 438978, at *2; *see also Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992). The Court finds that Plaintiff has failed to carry this burden and, therefore, service was improper on Sheriff Tubbs in his official capacity.

**IT IS RECOMMENDED** that Sheriff Tubbs' motion to dismiss for improper service of process be **GRANTED,** and the claims against Sheriff Tubbs be **DISMISSED WITHOUT PREJUDICE**.

## V.    CONCLUSION

For the above assigned reasons,

**IT IS ORDERED** that the Motion for Leave to File Second Amended Complaint [doc. #18] filed by Plaintiffs Travis C. Mills and Regina Harrell Mills is **GRANTED**.[6]

**IT IS RECOMMENDED** that the Motion to Remand [docs. #5, 16, 20] filed by Defendants Rocket Mortgage and Herschel Adcock be **DENIED.**

**IT IS FURTHER RECOMMENDED** that the Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction [docs. #5, 16, 20] filed jointly by Defendants Rocket Mortgage and Herschel Adcock be **GRANTED IN PART and DENIED IN PART.  IT IS**

---

[6] Although the undersigned has ruled on Plaintiffs' Motion for Leave to File Second Amended Complaint within a Report and Recommendation and Memorandum Order, these motions are not excepted in 28 U.S.C. § 636(b)(1)(A) and not dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure. Therefore, these orders issue of the date of this Report and Recommendation and Memorandum Order.  Any objection/appeal must be made to the district judge in accordance with Rule 72(a) of the Federal Rules of Civil Procedure within fourteen (14) days of this date.

**RECOMMENDED THAT** Counts 3, 5, 6, 7, and 8, be **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER RECOMMENDED** that the Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim [docs. #5, 16, 20] filed jointly by Defendants Rocket Mortgage and Herschel Adcock, the Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim [doc. #23] filed by Defendant Judge Walter Caldwell and the Rule 12(b)(5) Motion to Dismiss for Insufficient Service of Process [doc. #26] filed by Defendant Sheriff Mike Tubbs be **GRANTED** and the claims against all Defendants be **DISMISSED WITH PREJUDICE.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

MONROE, LOUISIANA, this 6th day of November, 2025.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE